UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| GILES KADRI, § | | |
| Institutional ID No. 25408-013, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. |
| § | | 1:05-CV-167-BI |
| JOSEPH HARO, Warden, et al., § | | ECF |
| § | | |
| Defendants. § | | |

# REPORT AND RECOMMENDATION AND TRANSFER TO THE UNITED STATES DISTRICT JUDGE

Plaintiff, a federal prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This court treats the complaint as filed pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Stephenson v. Reno*, 28 F.3d 26, 26 n.1 (5th Cir. 1994). The court entered an Order on September 14, 2005, requiring Plaintiff to show proof of exhaustion of his administrative remedies as to each Defendant (Doc. 3). Plaintiff filed his response on October 3, 2005 (Doc. 5), wherein he alleged that because Defendants refused to provide him with the appropriate forms, Plaintiff was unable to file any administrative grievances while confined in the Special Housing Unit ("SHU") at Federal Correctional Institution Big Spring ("FCI Big Spring"), Texas. Plaintiff further indicated that Federal Transfer Center, Oklahoma City, Oklahoma, officials told him he would have to wait until he arrived at Federal Correctional Institution Forrest City, Arkansas, to submit his grievances. Plaintiff indicated that he could not readily obtain the appropriate forms and instead filed a BP-10 form, which was returned by the Regional Office, citing a failure to file an administrative remedy first with the institution complained

of. Plaintiff indicated that he had sought to exhaust his administrative remedies for a period in excess of 18 months and asked that the court make a preliminary finding that he had exhausted his administrative remedies.

This case was transferred to the United States Magistrate Judge on October 4, 2005 (Doc. 7). On December 9, 2005, the court was notified that Plaintiff had been transferred to Taft, California. The court entered an Order for Special Report, providing Plaintiff with a questionnaire to complete and notifying Plaintiff of the availability of the United States Magistrate Judge to exercise jurisdiction in this case on January 5, 2006 (Docs. 9, 10, 11). Plaintiff filed a response to the questionnaire on February 23, 2006 (Doc. 15). Plaintiff was again notified of the availability of a United States Magistrate Judge to exercise jurisdiction in this case (Doc. 16). On August 30, 2006, Plaintiff refused his consent to having the United States Magistrate Judge conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c) (Doc. 17).

A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these proceedings. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976)(use of questionnaire to develop the factual basis of the plaintiff's complaint). Pursuant to 28 U.S.C. § 1915A, the court has conducted a review of Plaintiff's complaint, as supplemented by Plaintiff's responses to the questionnaire and to the Order of the court entered on September 14, 2005. The court has made findings of fact, conclusions of law, and a recommended disposition to the United States District Judge as herein provided.

**I.   Background**

In his complaint, as developed by his responses to the questionnaire and to the Order of September 14, 2005, Plaintiff alleges:

1.   While Plaintiff was confined at FCI Big Spring, Defendants Joseph Haro, A.W. Sherrod, Trevino Tapia, Wayne Huffman, John W. Clinton, Ruben Hernandez, and (FNU) Rangel

conspired to deprive Plaintiff of due process of law and to subject him to cruel and unusual punishment.

2. Plaintiff filed a request for administrative remedy, complaining about the lack of adequate accommodations at the FCI Big Spring library. This grievance was granted by the South Central Regional Office. New space was to be made available for an inmate law library, and additional typewriters were to be furnished.

3. Defendant Wayne Huffman was responsible for the law library. He called Plaintiff into his office in May, June, and July of 2003 and stopped Plaintiff in the yard in August 2003. He also talked to Plaintiff at least three times a month in September and October of 2003. Huffman told Plaintiff that he was foolish for having caused trouble by filing the administrative grievances, called Plaintiff a "ring leader," and told Plaintiff he wouldn't stand for it.

4. Plaintiff alleges that Huffman caused Defendant John W. Clinton to investigate him for some unknown reason. Huffman submitted a report to Clinton on December 18, 2003, in which Huffman stated that Plaintiff had killed and kidnaped people, belonged to an outlaw gang, and had made a poor institutional adjustment at FCI Big Spring. Because of this report, Plaintiff's unit teams have had a negative attitude toward him.

5. Plaintiff was placed in the SHU at FCI Big Spring. Plaintiff alleges that Haro, Sherrod, and Tapia knew that Huffman was harassing him and knew that the information in the report was false. He alleges that they must have known because all of the unit employees were close friends and turned a blind eye when wrongs were committed.

6. While in the SHU, Plaintiff was housed with violent individuals. He was permitted one shower a week with cold water and no soap, and there were dirty and slimy floors in the showers and cells. There were roaches everywhere, there were no blankets, and six or more inmates were assigned to each cell.

7. Plaintiff alleges that his medications were withheld, the meals were not nutritious, he did not have medical treatment, his legs and hands swelled, and he experienced shortness of breath, angina, and body aches.

8. Because his medications were withheld, Plaintiff required hospital treatment. After he collapsed in his cell on October 31, 2003, he was taken to the hospital, where he stayed until November 3, 2003.

9. Haro, Sherrod, and Tapia did not stop Huffman and allowed Plaintiff to remain in the SHU.

10. Rangel and Hernandez failed to report the SHU conditions to the authorities. Clinton failed to stop Huffman.

11. Plaintiff alleges that he repeatedly tried to obtain the correct forms to pursue his administrative remedies but was unable to obtain or file them. When he finally filed administrative grievances, they were returned as untimely.

12. Plaintiff is seeking an award of damages in the amount of $5,000,000.00.

## II.  ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted. These provisions thus apply to this *in forma pauperis* prisoner civil rights action. *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts

when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976)(use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing).

The court has reviewed Plaintiff's arguments and assertions set forth in his second amended complaint and Plaintiff's testimony at the *Spears* hearing to determine whether Plaintiff's claims present grounds for dismissal or present cognizable claims which require the Defendants to answer and the case to proceed.

Pursuant to 20 U.S.C. § 1915A, the court is required to review any complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. Under this statute, the court is required to dismiss the complaint or any portion of the complaint if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief. 20 U.S.C. § 1915A. The court is authorized *sua sponte* to test the proceeding for frivolousness or maliciousness even before the service of process or before the filing of an answer. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1).

**A.  Exhaustion of Administrative Remedies.**

Plaintiff asks that the court make a preliminary finding that he has exhausted his administrative remedies as to each of the named Defendants. Plaintiff acknowledges that he did not timely file his administrative grievances. However, he argues that the Defendants did not provide him with the correct forms. He argues that he attempted to exhaust his administrative remedies by

filing those forms that he was able to obtain when he was finally able to obtain them. Plaintiff provided the court with the specific documents he submitted as well as the responses that he received.

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of [Title 42 of the United States Code], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). That provision plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending. *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998). A prisoner must exhaust prison grievance remedies before he can pursue a civil rights claim pursuant to 42 U.S.C. § 1983. *Porter v. Nussle,* 534 U.S. 516, 524 (2002)("The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001)("an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues"); *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001)(The PLRA requires a prisoner "to exhaust 'available' 'remedies,' whatever they may be"; the "failure to do so prevents him from pursuing a federal lawsuit at this time.") Under the present version of § 1997e, the court is not required to determine whether a prisoner "has reasonably and in good-faith pursued his administrative remedies." *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (quoting *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998)). Since the amendment of § 1997e, the court has taken a strict approach to the exhaustion requirement. *Days*, 322 F.3d at 866. Exhaustion is mandatory "irrespective of the forms of relief sought and offered through administrative avenues." *Booth*, 532 U.S. at 741 n.6. A prisoner must "pursue the grievance to a conclusion." *Wright,* 260 F.3d at 358. "Quibbles about the nature of a prisoner's complaint, the type of remedy sought, and

the sufficiency or breadth of prison grievance procedures were laid to rest in *Booth*." *Id.* Any argument that *Porter* should not apply to this case is without merit. *See Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002)(*Porter* applies to a plaintiff's excessive force claim). Furthermore, as the Supreme Court has recently found, the PLRA mandates that prisoners "properly" exhaust their claims by complying with the facility's administrative rules and procedures. *Woodford v. Ngo*, 126 S. Ct. 2378, 2387, 165 L. Ed. 2d 368 (2006).

The Bureau of Prisons' administrative remedy procedure is found at 28 C.F.R. pt. 542, which provides:

> [I]f a dispute cannot be resolved informally, the inmate "may file a formal written complaint, on the appropriate form. This form is known as a BP-DIR-9. The complaint is not considered filed until a receipt is issued by prison officials. If the Warden does not respond to the inmate's BP-DIR-9 within 15 days of receipt of the complaint, the inmate may presume that his request has been denied. If an inmate is dissatisfied with the Warden's response to his BP-DIR-9, the inmate may file an appeal with the Regional Director on the appropriate form – a BP-DIR-10 – within 20 days of the Warden's response. Id. § 542.15. If the inmate is not satisfied with the Regional Director's response to his BP-DIR-10 request, he may file an appeal with the General Counsel on the appropriate form – a BP-DIR-11 – within 30 days of the Regional Director's response.

*See Shah v. Quinlin*, 901 F.2d 1241, 1243 (5th Cir. 1990)(internal citations and quotations omitted). Plaintiff has provided documents indicating that on August 11, 2004, an administrative remedy request dealing with "other complaint about staff," was rejected as untimely. Pl. Response filed October 3, 2005 (Doc. 5)(hereinafter "Pl. Response") Ex. 3. Plaintiff attached a rejection notice dated October 21, 2004, dealing with an administrative remedy regarding his "progress reports" and "harassment by staff," indicating that a BP-10 was rejected because Plaintiff must first file a BP-9 through the institution for a review and response at the Warden's level before filing an appeal at the Central Office level. Pl. Response Ex. 5. Plaintiff submitted an informal resolution request on November 9, 2004, complaining that an EMS-409 form, which indicated that he had "poor

institutional adjustment" at FCI Big Spring, was based on "complete falsehoods" and was inconsistent with his Unit Team program review report dated only one month earlier. Pl. Response Ex. 4.

Plaintiff argues that he was thus unable to effectively exhaust his administrative remedies. The court is not required to determine whether Plaintiff has reasonably and in good-faith pursued his administrative remedies. *Days*, 322 F.3d at 866 (citing *Underwood,* 151 F.3d at 294). Although the Fifth Circuit has taken a "strict approach" to the exhaustion requirement, it "'may be subject to certain defenses such as waiver, estoppel, or equitable tolling.'" *Id.* (quoting *Wendell*, 162 F.3d at 890). In *Days*, the Fifth Circuit held that "administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance." *Days*, 322 F.3d at 867. The prisoner in *Days* had alleged that "at the time of the accident, he could not write because his writing hand had broken and that, when his hand healed, he submitted a grievance." *Id.* at 865.

In *Woodford*, the Supreme Court explained "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *See Woodford*, 126 S.Ct. at 2386. In *Days*, the Fifth Circuit defined available remedies as those "'immediately utilizable,' and 'that is accessible or may be obtained: personally obtainable.'" *Days,* 322 F.3d at 867 (quoting Webster's New Int'l Dictionary, 150 (3rd ed. 1981)). In an unpublished opinion, the Fifth Circuit has noted that "if the institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies, then those remedies are not 'available' to the prisoner." *Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir. 2003)(unpublished opinion).

Having carefully considered this matter, and solely for the purpose of conducting this initial review, the court accepts Plaintiff's assertions that he was unable to obtain the appropriate forms from FCI Big Spring and other institutional officials in a timely fashion and that he filed grievances, which were returned as untimely, when he was able.

However, the earliest grievance provided by Plaintiff, dated November 9, 2004, complains only about his EMS-409 form, which indicates that he had "poor institutional adjustment at FCI Big Springs [sic]." Pl. Response Ex. 4. Well after Plaintiff filed this request, he submitted a BP-9 dated April 24, 2005, complaining that this negative memo (the EMS-409 form) remained in his file and that Lt. Hernandez stated that he and Rangel were not responsible for the decision to hold Plaintiff in SHU, and the BP-9 requested only that Hernandez, Rangel, Huffman, and Cathy Hicks be stripped of their jobs. Even assuming that Plaintiff did indeed exhaust those administrative remedies that were available to him, his BP-9 did not address Defendants Haro, Sherrod, Tapia, or Clinton; his medical treatment while in the SHU; or his complaints about the conditions in the SHU at FCI Big Spring. Cathy Hicks is not named as a Defendant in this case. The court thus finds, solely for the purpose of this initial review, that Plaintiff exhausted the administrative remedies that were available to him regarding only his claim that there was a notation in his file that he made a poor institutional adjustment at FCI Big Spring, his claim that Hernandez and Rangel told him that they were not responsible for his placement in SHU, and his request that Hernandez, Rangel, and Huffman lose their jobs.

The court further finds that Plaintiff failed to exhaust his administrative remedies regarding his claims that Defendants conspired against him, that he was deprived of medical treatment while in the SHU, and that he was subjected to cruel and unusual punishment while in the SHU at FCI Big Spring and failed to exhaust his administrative remedies against Defendants Haro, Sherrod, Tapia, and Clinton on any other claim. Thus, for his failure to exhaust his administrative remedies,

(1) Plaintiff's claims that Defendants conspired against him, that he was deprived of medical treatment while in the SHU, and that he was subjected to cruel and unusual punishment while in the SHU at FCI Big Spring should be **DISMISSED WITHOUT PREJUDICE** as to all Defendants, and (2) all other claims, if any, against Defendants Joseph Haro, A.W. Sherrod, Trevino Tapia, or John W. Clinton should also be **DISMISSED WITHOUT PREJUDICE**.

**B.     Personal Involvement and Supervisory Capacity Claims.**

In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts were causally connected to the constitutional violation alleged. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Personal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). "Supervisory officials may be held liable only if: (i) they affirmatively participate in the acts that cause constitutional deprivations; or (ii) [they] implement unconstitutional policies that causally result in plaintiff's injury." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

Even if the court were to find that Plaintiff exhausted his administrative remedies as to all Defendants, Plaintiff's allegations, accepted as true, fail to demonstrate that Haro, Sherrod, Tapia, Hernandez, or Rangel was personally involved in his confinement to the SHU of FCI Big Spring or in the denial of medical treatment during such confinement. Plaintiff argues that Haro, Sherrod, and Tapia had supervisory authority and oversight of all staff employed at FCI Big Spring. However, vicarious liability does not apply to § 1983 claims. *Pierce v. Texas Dept. Of Crim. Justice, Inst. Div.*, 37 F.2d 1146, 1150 (5th Cir. 1994). Thus, Plaintiff's allegations fail to demonstrate that Haro, Sherrod, Tapia, Hernandez, or Rangel affirmatively participated in acts that allegedly caused constitutional deprivations or that they implemented unconstitutional policies that causally result in Plaintiff's injury.

Also, even though Plaintiff alleges that Clinton investigated him, he alleges that Huffman's report contains the false, negative information about him, which is the basis of his complaint. Thus, Plaintiff's allegations also fail to demonstrate any personal involvement of Clinton in the alleged constitutional deprivations.

Therefore, the court alternatively finds that, if any claim against Haro, Sherrod, Tapia, Clinton, Hernandez, or Rangel is found to be properly exhausted, the claim should, nevertheless, be **DISMISSED WITH PREJUDICE AS FRIVOLOUS** because of the lack of personal involvement of these Defendants in the alleged constitutional deprivations.

**C.     Conspiracy Claim.**

Plaintiff alleges that the Defendants conspired to deprive him of his constitutional rights. To prove a conspiracy claim cognizable under § 1983, Plaintiff is required to show that the Defendants had "an agreement to commit an illegal act which resulted in the plaintiff's injury." *Hay v. City of Irving, Tex.*, 893 F.2d 796, 799 (5th Cir. 1990)(citing *Thomas v. City of New Orleans,* 687 F.2d 80, 83 (5th Cir. 1982)). Conclusory allegations of conspiracy will not support a claim under § 1983. *Wilson v. Budney,* 976 F.2d 958 (5th Cir. 1992). Plaintiff alleges that the Defendants are all "close friends" and are therefore impliedly aware of improprieties conducted by FCI Big Spring officials and will necessarily cover up any such activities. Plaintiff cites no basis for this claim, other than these conclusory allegations. Should it be determined that Plaintiff has exhausted this claim, the court alternatively finds that Plaintiff's conspiracy claim should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS** because Plaintiff has failed to allege any supporting facts.

**D.     Claim Against Huffman.**

The only claim that Plaintiff has exhausted against Huffman is the claim that Huffman noted on Plaintiff's EMS-409 form, still in Plaintiff's file, that Plaintiff had a poor institutional adjustment

at FCI Big Spring. Plaintiff denies the accuracy of the report and specifically alleges that Huffman retaliated against him by filing this notation as a result of the grievances that Plaintiff filed regarding the law library. After reviewing Plaintiff's complaint, his responses to the September 14, 2005, Order of the court, and his answers to the questionnaire, the court finds that Plaintiff has stated a claim of a constitutional violation for retaliation sufficient to require an answer or other responsive pleading by Wayne Huffman.

### IV.   CONCLUSION AND RECOMMENDATION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge:

1.   Dismiss Plaintiff's claims against Joseph Haro, A.W. Sherrod, Trevino Tapia, John W. Clinton, Ruben Hernandez, and FNU Rangel without prejudice for Plaintiff's failure to exhaust his administrative remedies.

2.   Dismiss Plaintiff's claims that the Defendants conspired against him, that he was deprived of medical treatment while in the SHU, and that he was subjected to cruel and unusual punishment while confined to the SHU at FCI Big Spring, each without prejudice for Plaintiff's failure to exhaust his administrative remedies.

3.   Require an answer or other responsive pleading by Wayne Huffman on Plaintiff's constitutional claim of retaliation for the grievances filed about the law library.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District

Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**IT IS, THEREFORE, ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred to the docket of United States District Judge Sam R. Cummings.

DATED this 4th day of October, 2006.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**